FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 14, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TINA M. C., | NO: 1:19-CV-03137-RHW |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 12, 17. This matter was submitted for consideration without oral argument. Plaintiff is represented by attorney D. James Tree. Defendant is represented by Special Assistant United States Attorney Michael Howard. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 12, is denied and Defendant's Motion, ECF No. 17, is granted.

ORDER - 1

### JURISDICTION

Plaintiff Tina M. C. (Plaintiff), filed for disability insurance benefits (DIB) on June 24, 2016, alleging an onset date of June 14, 2010.  Tr. 236-37.  At the hearing, the alleged onset date was amended to August 23, 2013.[1]  Tr. 56.  Benefits were denied initially, Tr. 150-52, and upon reconsideration, Tr. 156-62.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on February 7, 2018.  Tr. 52-97.  On June 22, 2018, the ALJ issued an unfavorable decision, Tr. 12-39, and on April 17, 2019, the Appeals Council denied review.  Tr. 1-6.  The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

### BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was born in 1972 and was 45 years old at the time of the hearing.  Tr. 236.  She graduated from high school and went to beauty school.  She has work

---

[1] A different ALJ issued an unfavorable decision dated August 22, 2013 regarding Plaintiff's prior claim.  Tr. 98-116.  Thus, the relevant period for this claim is the amended alleged onset date of August 23, 2013, the day after the previous decision, to Plaintiff's date last insured of December 31, 2015.  Tr. 16.

ORDER - 2

experience as a cosmetologist, insurance clerk and agent, medical clerk and biller, and hotel clerk and housekeeper.  Tr. 66-67, 82-83, 457-59.

Plaintiff testified she could not work during the relevant period because of knee problems, carpal tunnel syndrome, and an eye problem.  Tr. 61.  She could not stand for very long, especially in one place.  Tr. 62.  She had carpal tunnel surgery in 2015.  Tr. 68-69.  She had lower back pain which caused her to need help dressing.  Tr. 69-70.  Plaintiff testified she needed to lie down one to two times per day for ten to fifteen minutes or up to two hours.  Tr. 70.  She had difficulty sleeping due to restlessness.  Tr. 73.  She also had daily headaches.  Tr. 75-76.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

ORDER - 3

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

ORDER - 4

1    The Commissioner has established a five-step sequential analysis to determine

2    whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-

3    (v).  At step one, the Commissioner considers the claimant's work activity.  20

4    C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful

5    activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §

6    404.1520(b).

7        If the claimant is not engaged in substantial gainful activity, the analysis

8    proceeds to step two.  At this step, the Commissioner considers the severity of the

9    claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from

10   "any impairment or combination of impairments which significantly limits [his or

11   her] physical or mental ability to do basic work activities," the analysis proceeds to

12   step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy

13   this severity threshold, however, the Commissioner must find that the claimant is not

14   disabled.  20 C.F.R. § 404.1520(c).

15       At step three, the Commissioner compares the claimant's impairment to

16   severe impairments recognized by the Commissioner to be so severe as to preclude a

17   person from engaging in substantial gainful activity.  20 C.F.R. §

18   404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

19   enumerated impairments, the Commissioner must find the claimant disabled and

20   award benefits.  20 C.F.R. § 404.1520(d).

21

ORDER - 5

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity from her alleged onset date of August 23, 2013, through her date last insured of December 31, 2015.  Tr. 19.  At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: status-post 2015 bilateral carpal-tunnel release surgeries, degenerative disc disease and facet hypertrophy of the lumbar spine, obesity, asthma, and obstructive sleep apnea.  Tr. 19.  At step three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 22.

The ALJ then found that, through the date last insured, Plaintiff had the residual functional capacity to perform sedentary work with the following limitations:

> She could lift and/or carry 20 pounds occasionally and 10 pounds frequently.  She could stand and/or walk two hours and could sit six hours in an eight-hour workday.  She could occasionally climb ramps and stairs, but could never climb ladders, ropes, or scaffolds.  She

ORDER - 7

could occasionally balance, stoop, kneed, crouch, and crawl. She needed to avoid concentrated exposure to vibration, fumes, gases, poor ventilation, and hazards such as moving machinery and unprotected heights. She required the ability to alternate between sitting and standing briefly, but while remaining in place and on task without the need to move away from the workstation. She could frequently handle, finger, and feel.

Tr. 23.

At step four, the ALJ found that, through the date last insured, Plaintiff was capable of past relevant work as a medical biller/office clerk/accounting clerk, insurance sales agent, and insurance clerk. Tr. 27. Alternatively, at step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that through the date last insured, there were other jobs that existed in significant numbers in the national economy that Plaintiff could have performed such as document preparer, charge account clerk, addressor, election clerk, or surveillance system monitor. Tr. 28-29. Thus, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from August 23, 2013, the alleged onset date, through December 31, 2015, the date last insured. Tr. 29.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II of the Social Security Act. ECF No. 12. Plaintiff raises the following issues for review:

1.    Whether the ALJ properly evaluated Plaintiff's medically determinable impairments at step two;

2.    Whether the ALJ properly evaluated Plaintiff's symptom claims;

3.    Whether the ALJ properly considered the medical opinion evidence; and

4.    Whether the ALJ properly considered the lay witness statements.

ECF No. 12 at 2.

## DISCUSSION

**A.    Step Two**

Plaintiff contends the ALJ erred by finding that her knee and hip impairments are non-severe. ECF No. 12 at 5-10. At step two of the sequential process, the ALJ must determine whether there is a medically determinable impairment established by objective medical evidence from an acceptable medical source. 20 C.F.R. § 404.1521. A statement of symptoms, a diagnosis, or a medical opinion does not establish the existence of an impairment. *Id*. After a medically determinable impairment is established, the ALJ must determine whether the impairment is "severe;" i.e., one that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). However, the fact that a medically determinable condition exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations. *See e.g. Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Fair v. Bowen*, 885

ORDER - 9

F.2d 597, 603 (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

The ALJ found that degenerative changes to Plaintiff's hips and knees were nonsevere. Tr. 20. The ALJ noted that Plaintiff had knee surgery in 2007 and there was no evidence it was not successful. Tr. 20. The ALJ cited imaging studies taken during the relevant period indicating mild osteoarthritic changes in both knees. Tr. 20 (citing Tr. 608-09, 642, 793, 820). Imaging of Plaintiff's right knee in February 2013 noted a history of meniscal surgery in 2007 and mild tricompartmental degenerative change. Tr. 20, 608-09. A March 2014 x-ray of the right knee showed a mild to moderate degree of medial compartment joint space narrowing and a moderate degree of patellofemoral joint space narrowing which was noted to be unchanged from a 2010 x-ray. Tr. 643. In February 2015, imaging of the right knee indicated mild narrowing of the medial and femoral patellar compartments of the joint space resulting in an impression of mild degenerative changes in the knee. Tr. 20, 798. Imaging done in February 2013 showed a moderate degree of progression of joint space narrowing of the medial aspect of the knee and a moderate degree of lateral patellofemoral joint space narrowing. Tr. 642. The ALJ's finding of mild degenerative changes is supported by substantial evidence.

As to any limitations, the ALJ cited an emergency room record from February 2015 indicating that after a fall, there were abrasions on Plaintiff's right knee and tenderness at the right buttock, but a lower extremity exam was normal with normal

range of motion, normal hip exam, and ligamentous test findings were all negative with no evidence of injury to cartilage or meniscus. Tr. 20, 793. There was no bony tenderness and an x-ray showed no fracture or dislocation. Tr. 793. Imaging noted *supra* indicated mild degenerative changes in the knee. Tr. 798. During a follow up visit a few days later, it was noted that Plaintiff's knee pain was improving with ibuprofen. Tr. 20, 820. There are no records cited by Plaintiff or noted by the Court identifying any functional limitations from the left knee. The ALJ reasonably found the evidence does not show degenerative changes in Plaintiff's knees significantly restricted her mobility. Tr. 20.

Plaintiff contends that "due to the severity of her knee impairments" Plaintiff underwent bilateral arthroscopic meniscectomies in 2017. ECF No. 12 at 6-7 (citing 2319-25, 2325-27). Although Plaintiff had arthroscopic meniscus surgery on both knees in 2017, Tr. 2319-21, more than a year after the date last insured, the ALJ accurately found that there no evidence that the 2007 right meniscus repair was unsuccessful during the period at issue. Tr. 20. Plaintiff was determined to be not disabled as of August 22, 2013 despite the 2007 meniscus repair. Furthermore, as noted *supra*, a February 2015 emergency room exam found no evidence of injury to the cartilage, meniscus, or bones of the right knee and imaging at that time found only mild osteoarthritis. Tr. 793, 798. Plaintiff points to no evidence of a meniscal impairment during the relevant period and the Court finds none in the record. The

1  ALJ's conclusion that Plaintiff's meniscus was not an issue during the relevant

2  period is supported by substantial evidence.

3       Plaintiff observes the previous ALJ found that Plaintiff has the severe

4  impairment of bilateral knee degenerative joint disease, suggesting this ALJ should

5  have made the same finding.  ECF No. 12 at 6 n.1 (citing Tr. 103).  Even if the

6  ALJ should have determined that Plaintiff's knee impairments were severe, the

7  current RFC finding is more restrictive than the prior ALJ's RFC finding, *compare*

8  Tr. 23 and 105-06, there is no harm established on that basis alone.

9       With regard to Plaintiff's hips, the ALJ observed that x-rays taken during the

10  relevant period show mild to moderate joint space narrowing and there is no

11  evidence that this condition restricted her mobility.  Tr. 20 (citing Tr. 642).  Records

12  cited by Plaintiff indicate that Plaintiff reported hip pain in March 2014, but

13  examination was deferred pending imaging.  ECF No. 12 at 9; Tr. 628.  Imaging

14  later showed mild to moderate joint space narrowing.  Tr. 20, 642.  In July 2014,

15  Plaintiff complained of knee and hip pain during an emergency room visit, but no

16  exam findings, imaging, or diagnosis was recorded.  Tr. 690.  In August 2014,

17  Plaintiff established care with a new provider and "congenital hip problem" was

18  listed as a current problem, but there were no exam findings or description of

19  Plaintiff's complaints or limitations.  Tr. 799-800.  The Court notes another mention

20  of hip pain in July 2015, but again with no exam findings or further details.  Tr. 828.

21

Based on the foregoing, the ALJ reasonably concluded Plaintiff's hip impairment is not severe.

Plaintiff contends that the determination that Plaintiff's hip and knee impairments were nonsevere means the ALJ failed to consider whether Plaintiff's hip or knee impairments meet or equal the severity of a listing 1.02 at step three and that the ALJ failed to consider Plaintiff's knee and hip impairments in evaluating Plaintiff's residual functional capacity.  ECF No. 12 at 9-10.  However, the ALJ found that the evidence does not demonstrate the inability to ambulate effectively as defined by Listing 1.00B2b, Tr. 22, which is an element of Listing 1.02  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.02A.  With respect to the RFC finding, the ALJ found that "the record does not establish that they [Plaintiff's hip and knee impairments] caused more restrictive limitations than those stated in the sedentary residual functional capacity assessment below."  Tr. 20.  The ALJ reasonably found that the sedentary RFC with the ability to alternate sitting and standing and postural limitations accounts for any significant knee and hip limitations.  Tr. 23.  Plaintiff has not demonstrated how the record supports any more restrictive limitations than those in the RFC.  *See Shinseki*, 556 U.S. at 409-10 (the party challenging the ALJ's decision bears the burden of showing harm).  Based on the foregoing, even if the ALJ should have found Plaintiff's knee or hip impairments to be severe, any error is harmless because the outcome would not be

1  changed. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir.

2  2008) (citing *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir.2007)).

3  **B.    Symptom Claims**

4      Plaintiff contends the ALJ improperly rejected her symptom claims.  ECF

5  No. 12 at 17-21.  An ALJ engages in a two-step analysis to determine whether a

6  claimant's testimony regarding subjective pain or symptoms is credible.  "First, the

7  ALJ must determine whether there is objective medical evidence of an underlying

8  impairment which could reasonably be expected to produce the pain or other

9  symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

10  "The claimant is not required to show that her impairment could reasonably be

11  expected to cause the severity of the symptom she has alleged; she need only show

12  that it could reasonably have caused some degree of the symptom." *Vasquez v.*

13  *Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

14      Second, "[i]f the claimant meets the first test and there is no evidence of

15  malingering, the ALJ can only reject the claimant's testimony about the severity of

16  the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

17  rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

18  citations and quotations omitted).  "General findings are insufficient; rather, the

19  ALJ must identify what testimony is not credible and what evidence undermines

20  the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

21  Cir. 1995)); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)

("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

First, the ALJ found the medical evidence does not show Plaintiff's alleged limitations are entirely consistent with the medical evidence. Tr. 25. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601. However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857. Minimal objective evidence is a factor which

may be relied upon in discrediting a claimant's testimony, although it may not be the only factor.  *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

With respect to Plaintiff's carpal tunnel syndrome, the ALJ noted that in March 2014, Plaintiff reported her hands sometimes fell asleep but were not painful.  Tr. 24, 626.  On exam, diminished pinprick sensation was noted.  Tr. 24, 628.  In November 2014, Plaintiff reported pain in her hands and wrists which prompted a nerve conduction study.  Tr. 24, 806, 2183.  The ALJ acknowledged that those findings accorded with Plaintiff's complaints and led to carpal tunnel release surgery in March and April 2015.  Tr. 24, 659, 661, 666-67.  However, the ALJ also noted that Plaintiff had no strength or range of motion deficits in her hands prior to her surgeries, and that follow-up exams in April and May 2015 showed full range of motion, no numbness or tingling, healing incisions, and that she was neurovascularly intact.  Tr. 25, 655-56, 659-60, 664-65.

The ALJ found no evidence of decline in her wrists thereafter, and noted Plaintiff demonstrated good, equal hand grasp during an emergency room visit for a migraine in December 2015.  Tr. 25, 782.  Plaintiff cites thumb pain which was first mentioned in August 2015 and eventual bilateral trigger thumb release surgery in 2017, more than a year after her date last insured, as indicating that her carpal tunnel syndrome was not resolved by her 2015 surgery.  ECF No. 12 at 19 (citing Tr. 715-17, 833, 835, 851, 881, 1443, 1646).  However, the records cited do not

ORDER - 16

contradict the ALJ's finding that there is no evidence of imitations due to carpal tunnel syndrome after surgery.

Regarding Plaintiff's back impairment, the ALJ noted x-ray findings of mild scoliosis, mild or subtle anterolisthesis of L4 on L5, and multi-level spurring.  24, 644, 815.  Results of MRIs indicated spurring, and foraminal narrowing from L3-4 to L5-S1.  24, 759, 785.  The ALJ determined these conditions are consistent with findings of lumbosacral tenderness on exam but also observed that Plaintiff's providers did not document significant gait or strength deficiencies during the relevant period.  Tr. 24-25, 576, 814.  The ALJ also cited the findings of Thomas Curtis, M.D., a spine specialist at Virginia Mason Spine Center, who examined Plaintiff shortly after the end of the relevant period in February 2016 and concluded that much of Plaintiff's back pain was attributable to "mechanical back pain and ergonomics."  Tr. 25, 762.  It was noted that she was not a surgical candidate because her symptoms did not correlate exactly with the results of her imaging studies.  Tr. 25, 766.  Based on these findings, the ALJ's determination that the objective evidence does not support the level of limitation alleged is supported by substantial evidence.

Lastly, the ALJ noted that there is little evidence of Plaintiff's pulmonary impairments during the relevant period.  Tr. 25.  Her asthma was well-controlled, and her sleep apnea was treated effectively with a CPAP.  Tr. 25, 677, 687, 776, 788, 802, 807, 1345.

Second, the ALJ found that Plaintiff's conditions were treated conservatively.  Tr. 25.  Claims about disabling pain are undermined by conservative treatment.  *Parra*, 481 F.3d at 750–51 (finding "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *Meanel v. Apfel,* 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received"); *see Tommasetti,* 533 F.3d at 1039–40 (classifying physical therapy and anti-inflammatory medication, nerve stimulation, and a lumbosacral corset as conservative treatment for allegedly debilitating back pain).  The ALJ observed that Plaintiff's lumbar impairment was managed conservatively with medication and physical therapy and noted that no provider recommended surgery or injections during the relevant period.  Tr. 25, 576, 695-717, 764.  Plaintiff cites a note by treating PA-C Michael Urakawa in December 2015 that epidural steroid injections were not recommended because she had multilevel problems, ECF No. 12 at 20 (citing Tr. 837), but two months later, spine specialist Dr. Curtis recommended only conservative treatment: physical therapy, weight loss, and general conditioning.  Tr. 25, 761-62.  It was noted that perhaps if conservative treatment failed, a steroid injection would be considered, but that "she does not seem to have symptoms that correlate exactly with her imaging and, therefore, is not a surgical candidate."  Tr. 766.  The ALJ also noted

conservative treatment was effective for Plaintiff's pulmonary impairments.  Tr. 25.  The ALJ reasonably concluded that Plaintiff's impairments were treated conservatively and gave less weight to her allegations.

Third, the ALJ found Plaintiff engaged in an activity inconsistent with her allegations.  Tr. 25.  It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in assessing Plaintiff's symptom claims.  *See Rollins*, 261 F.3d at 857.  The ALJ noted that Plaintiff testified that during the last few months of 2015, she participated in kickboxing classes.  Tr. 25, 76.  The ALJ observed that is an activity which involves the use of the back, arms, hands, and legs in a manner inconsistent with her allegations.  Tr. 25, 76.  Plaintiff contends that she testified that she participated "very minimally" and was "significantly restricted" in her ability to perform the movements required.  ECF No. 12 at 20.  However, this is an overstatement of Plaintiff's testimony.  Plaintiff testified that she would walk rather than run laps to warm up; that she could not kick roundabouts because of her hips; and that she "tried to do some of the kicking but it would be because I was so short" that she would kick the base instead of the bag.  Tr. 76.  She testified that she would stand for 10 minutes then sit for 10 minutes.  Tr. 76.  This was reasonably considered by the ALJ to be an activity inconsistent with Plaintiff's claims of disabling limitations during the relevant period.

1    **C.    Medical Opinion Evidence**

2        Plaintiff contends the ALJ erroneously rejected the opinions of Caryn

3    Jackson, M.D., a treating physician, and Rox Burkett, M.D., a reviewing physician.

4    ECF No. 12 at 10-17.  There are three types of physicians: "(1) those who treat the

5    claimant (treating physicians); (2) those who examine but do not treat the claimant

6    (examining physicians); and (3) those who neither examine nor treat the claimant but

7    who review the claimant's file (nonexamining or reviewing physicians)." *Holohan*

8    *v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).

9    "Generally, a treating physician's opinion carries more weight than an examining

10   physician's, and an examining physician's opinion carries more weight than a

11   reviewing physician's." *Id*.  "In addition, the regulations give more weight to

12   opinions that are explained than to those that are not, and to the opinions of

13   specialists concerning matters relating to their specialty over that of nonspecialists."

14   *Id*. (citations omitted).

15       If a treating or examining physician's opinion is uncontradicted, an ALJ may

16   reject it only by offering "clear and convincing reasons that are supported by

17   substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

18   "However, the ALJ need not accept the opinion of any physician, including a

19   treating physician, if that opinion is brief, conclusory and inadequately supported by

20   clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228

21   (internal quotation marks and brackets omitted).  "If a treating or examining doctor's

opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

### 1.  Caryn Jackson, M.D.

Dr. Jackson completed a medical report form in November 2017 and indicated she had treated Plaintiff since February 2017.  Tr. 1744-45.  She listed diagnoses of severe degenerative disc disease with spondylothesis, lumbar spondylosis, severe osteoarthritis both knees, morbid obesity, and depression/anxiety.  Tr. 1744.  She opined that Plaintiff needs to lie down for two to three hours a day and that she would miss four or more days of work per month.  Tr. 1745.  She also indicated Plaintiff's limitations had existed since January 2005.  Tr. 1745.  The ALJ gave little weight to Dr. Jackson's opinion.  Tr. 21, 26.

First, the ALJ found Dr. Jackson's opinion is not based on personal observations since she did not begin treating her until February 2017.  Tr. 26.  A physician's opinion may be rejected if the physician's examination occurred outside the relevant period and other contradictory medical evidence exists. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998); *see also Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010).  It was reasonable for the ALJ to question Dr. Jackson's statements regarding nature of Plaintiff's limitations for 12 years before she began treating Plaintiff, especially since Plaintiff worked until 2010 and was previously determined to be "not disabled" through August 22,

3013.  Tr. 16, 21, 26, 98-116.  Plaintiff cites *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988), and argues that a retrospective medical report should not be disregarded solely on that basis.  ECF No. 12 at 11-12.  However, other contradictory evidence exists which undermines Dr. Jackson's opinion and the ALJ's finding is reasonable and supported by substantial evidence.  *See Tidwell*, 161 F.3d at 602.

Second, the ALJ found Dr. Jackson's opinion is inconsistent with other medical evidence from nonexamining physicians Louis Martin, M.D, and Robert Hander, M.D.  Tr. 26.  The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and are consistent with it.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  The opinion of an examining or treating physician may be rejected based in part on the testimony of a non-examining medical advisor when other reasons to reject the opinions of examining and treating physicians exist independent of the non-examining doctor's opinion.  *Lester*, 81 F.3d at 831, citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989).  The ALJ gave great weight to the opinions of Drs. Martin and Hander and based the RFC finding on the limitations assessed by them.  Tr. 26.  The ALJ found their opinions are consistent with the level of degeneration shown on spinal imaging studies, with Plaintiff's body habitus, and with the evidence that Plaintiff's back pain was managed with conservative

treatment.[2]  Tr. 26 (citing Tr. 626-45, 655-68, 754-846).  As discussed, *supra*, these findings are supported by substantial evidence.  Since there is other evidence in the record supporting the opinions of Dr. Martin and Dr. Hander, the ALJ properly relied on the opinions in rejecting the opinion of Dr. Jackson.

Plaintiff contends the ALJ's finding that spinal imaging showed mild to moderate degeneration mischaracterizes the objective evidence.  ECF No. 12 at 14. Plaintiff cites a December 2015 lumbar MRI which indicated the impression of degenerative disc disease "as detailed in the body of the report," all of which was described as mild or moderate.  Tr. 785.  The MRI also described "potentially severe" narrowing of the left neural foramen at L5-S1 and "perhaps" the right neural foramen at L4-5.  Tr. 785.  Plaintiff's treating physician assistant reviewed the MRI and wrote that "[t]here is a finding of severe narrowing on the left foramen at the

---

[2] Plaintiff contends the ALJ made a "conclusory determination" and failed to point to specific evidence in the medical record contradicting the rejected opinion.  ECF No. 12 at 13 (citing *Trevizo v. Berryhill*, 862 F.3d 987, 998 (9th Cir. 2017)). However, the ALJ noted Dr. Jackson's opinion is "inconsistent with the medical evidence discussed in the paragraph above."  Tr. 26.  The previous paragraph discussed the opinions of Drs. Martin and Hander and the evidence consistent with those opinions.  This reference to a specific paragraph discussing specific evidence is sufficiently specific to support the ALJ's finding.

ORDER - 23

L5-S1 level," which overstates the certainty of the MRI findings. Tr. 836. He

referred Plaintiff to Virginia Mason Medical Center, where Dr. Curtis, a spine

specialist, obtained another MRI in February 2016. Tr. 771, 836. That MRI was

compared to the December 2015 MRI and indicated only "mild lumbar spondylosis,

worst at L5-S1and in the lower facet joints." Tr. 771. As noted *supra*, after

reviewing both MRIs and an examination, Dr. Curtis determined that much of

Plaintiff's back pain was attributable to "mechanical back pain and ergonomics." Tr.

25, 762. Conservative treatment was recommended because her symptoms did not

correlate with the results of her imaging studies. Tr. 25, 766. Thus, the ALJ's

conclusion is supported by substantial evidence and the ALJ did not mischaracterize

the objective evidence regarding spinal imaging.

### 2. *Rox Burkett, M.D.*

Dr. Burkett reviewed the record in January 2018 and diagnosed degenerative

joint disease of both knees, degenerative lumbar spine disease multilevel, developing

hip disease with calcific tendinitis, bilateral carpal tunnel syndrome, and asthma,

mental health issues, and elevated BMI. Tr. 1975. He opined that Plaintiff "could

be awarded a favorable decision" (i.e., be determined to be disabled) because she

could equal Listing 1.02 or 1.04 or be found to have a "much reduced RFC" as "a

reasonable case for standing only 30-60 minutes is not unreasonable." Tr. 1975-76.

The ALJ gave little weight to Dr. Burkett's opinion. Tr. 26. First, the ALJ

found that Dr. Burkett did not explain with specificity why Plaintiff would equal a

listing and found his opinion is inconsistent with the medical evidence. The quality

of the explanation provided in a medical opinion and the consistency of a medical

opinion with the record as a whole are relevant factors in evaluating a medical

opinion. 20 C.F.R. § 404.1527(c); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th

Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The ALJ concluded

Dr. Burkett's opinion is inconsistent with the medical evidence showing Plaintiff

retained good strength and mobility throughout the relevant period, that conservative

treatment was recommended for her back pain, that she retained full motion in her

hands before carpal tunnel surgery, and that her carpal tunnel symptoms improved

after surgery. Tr. 26 (citing Tr. 626-45, 655-68, 754-846). As discussed *supra*,

these factors are supported by substantial evidence.

Second, the ALJ found the basis for Dr. Burkett's opinion is unclear. Tr. 26.

The extent to which a medical source is familiar with the medical record is a relevant

factor in weighing a medical opinion. 20 C.F.R. § 404.1527(c). The ALJ said, "[i]t

is unclear what evidence he was given or reviewed" and that neither the email asking

Dr. Burkett nor his opinion details the evidence he was provided for review. Tr. 26-

27. Plaintiff suggests the ALJ "ignored" the first page of Dr. Burkett's opinion with

a section heading of "Records Reviewed," ECF No. 12 at 15, which listed Allergy

Asthma Specialists, Kaiser Permanente, OCHIN Richmond, Samaritan Health

Services, Sleep Center at Memorial hospital, Orthopedics Northwest, Yakima

Regional Medical Center, Regis PT, Virginia Mason Care Yakima, Yakima Valley

1  Hospital, Waters Edge Clinic, Comprehensive Health Care, although this list does

2  not include dates of the records reviewed or exhibit numbers.  Tr. 1974.

3      However, it is noted that Dr. Burkett did not consider the results of Plaintiff's

4  carpal tunnel surgery because he stated that Plaintiff "needs surgery" for bilateral

5  carpal tunnel syndrome and "surgery has been suggested . . .  but that has not

6  happened." Tr. 1973-74.  Exhibit 7F, Tr. 655-68, contains records from Orthopedics

7  Northwest regarding Plaintiff's carpal tunnel surgery, so although he listed

8  Orthopedics Northwest in the "Records Reviewed" section, it is unclear whether Dr.

9  Burkett reviewed those records since he was not aware of Plaintiff's surgery.  Dr.

10  Burkett cited a few records from Exhibits 1A, 2F, 3F, 4F, and 5F in support of the

11  "Diagnosis" section, but no records from any other exhibit, even though the medical

12  record includes a total of 53 exhibits, of which at least 20 exhibits are from the

13  providers named by Dr. Burkett.  It is unclear whether Dr. Burkett reviewed all

14  records from the providers listed or just the earliest records.  Given these factors, and

15  particularly given Dr. Burkett's lack of awareness that Plaintiff had carpal tunnel

16  surgery, it was reasonable for the ALJ to question the basis for Dr. Burkett's

17  opinion.

18      Third, the ALJ noted that Dr. Burkett indicated he was certified by the

19  American Board of Disability Analysts but that is "an organization that is not

20  recognized by the American Medical Association." Tr. 27.  This is not a specific,

21  legitimate reason for rejecting the opinion.  ECF No. 17.  Dr. Burkett's membership

in a specialty organization may or may not lend extra weight to his opinion but provides no basis to reject the opinion.[3]    The ALJ identified no evidence calling into question Dr. Burkett's experience or qualifications to provide a medical opinion. Although this reasoning was improper, the ALJ cited other specific, legitimate reasons supported by substantial evidence for giving less weight to Dr. Burkett's opinion, so any error was harmless.  *See e.g., Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).  Therefore, the outcome is the same despite the improper reasoning.  Errors that do not affect the ultimate result are harmless.  *See Parra*, 481 F.3d at 747 (9th Cir. 2007).

**D.    Lay Witness Statements**

Plaintiff contends the ALJ erred by rejecting the lay witness statements of Plaintiff's husband and friends.  ECF No. 12 at 21.  An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled.  *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).  Lay witness

---

[3] The ALJ appears to be correct that the American Association of Disability Analysts is not an organization listed on the American Medical Association (AMA) Specialty and Service Society member list.  *See* https://www.ama-assn.org/system/files/2020-05/sss-section-council-directory.pdf.  However, there appears to be no disability organization on the list and no inference is drawn from the lack of connection to the AMA.

ORDER - 27

1    evidence cannot establish the existence of medically determinable impairments,

2    but lay witness evidence is "competent evidence" as to "how an impairment affects

3    [a claimant's] ability to work." *Id.*; 20 C.F.R. § 404.1513; *see also Dodrill v.*

4    *Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a

5    position to observe a claimant's symptoms and daily activities are competent to

6    testify as to her condition."). If a lay witness statement is rejected, the ALJ "'must

7    give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462,

8    1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919).

9         Plaintiff's husband submitted a statement dated January 19, 2018, indicating

10   that Plaintiff is limited in standing, walking, and sitting; that she needs to lie down

11   due to medication; and that he cleans the house. Tr. 476. He stated that Plaintiff

12   needs his help with her medications, she sometimes uses a cane for walking, and

13   that she uses a scooter at the grocery store. Tr. 476. He also noted four surgeries

14   in 2017. Tr. 476.

15        Two statements dated October 2017 from a friend and a neighbor indicate

16   similar observations such as "hard for her to stand and sit for prolonged periods of

17   time," "her fine motor skills have changed," and "she is unable to walk long

18   distances, prolonged standing & sitting. She is unable to lift heavy weights or use

19   her hands for continuous repetitive work." Tr. 466-67. The ALJ gave these lay

20   witness statements little weight. Tr. 27.

21

First, the ALJ found that the medical evidence is not consistent with the limitations alleged. Tr. 27. An AJ may reject lay witness testimony that is inconsistent with the objective evidence in the record. *See Bayliss*, 427 F.3d at 1218; *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). The ALJ found the statements of the lay witnesses reiterate Plaintiff's allegations and referenced the evidence that supports the finding that Plaintiff has some limitations, but not disabling limitations precluding all work. Tr. 27. "[B]ecause the ALJ provided clear and convincing reasons for rejecting the claimant's own subjective complaints, and because the lay witness's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting the lay witness's testimony." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009); *see also Molina*, 674 F.3d at 1114. This is a germane reason to give little weight to the lay witness statements.

Second, the ALJ found that none of the lay witnesses has the training necessary to make exacting observations of medical signs and symptoms or their intensity. Tr. 27. This is not a germane reason for rejecting the lay witness statements. By definition, lay witnesses are not medical professionals, and this reasoning is contrary to the Secretary's regulation indicating that statements from lay witnesses regarding the impact of an impairment on a claimant's ability to work is competent evidence to be considered. 20 C.F.R. § 404.1513(d). Although

this reason is improper, the error is harmless because the ALJ provided another

germane reason supported by substantial evidence.  *Molina*, 674 F.3d at 1122.

Errors that do not affect the ultimate result are harmless.  *See Parra*, 481 F.3d at

747; *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Sec'y of*

*Health and Human Servs.,* 734 F.2d 1378, 1380 (9th Cir. 1984).

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the

ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly,

1. Plaintiff's Motion for Summary Judgment, ECF No. 12, is DENIED.

2. Defendant's Motion for Summary Judgment, ECF No. 17, is GRANTED.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order

and provide copies to counsel.  Judgment shall be entered for Defendant and the file

shall be **CLOSED**.

**DATED** May 14, 2021.

_s/ Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge

ORDER - 30